```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION


William Michael Fiore,        :

        Plaintiff,            :

    v.                        :    Case No. 2:12-cv-1097

Commissioner of Social        :    JUDGE GREGORY L. FROST
    Security,                      Magistrate Judge Kemp
                              :
        Defendant.
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, William Michael Fiore, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits. That application was filed on May 13, 2009, and alleged that plaintiff became disabled on December 31, 2006.

After initial administrative denials of his application, plaintiff was given a hearing before an Administrative Law Judge on May 17, 2011. In a decision dated June 28, 2011, the ALJ denied benefits. That became the Commissioner's final decision on October 2, 2012, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on March 19, 2013. Plaintiff filed his statement of specific errors on May 16, 2013. The Commissioner filed a response on July 15, 2013. No reply brief was filed, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 31 years old at the time of the administrative hearing and who was one course away from obtaining a bachelor's degree in psychology, testified as follows. His testimony appears at pages 35-60 of the administrative record.

Plaintiff had worked as an active foreman for his family's concrete company.  His position included preparing estimates, meeting with customers, and managing jobs.  Before that, he had been a concrete pourer and finisher and a brick and block layer.  The injury which prevented him from working occurred on the job in 2006.  Before that injury, he had suffered a knee sprain in 2004 and a shoulder sprain in 2005.  He was also in two motor vehicle accidents which left him with a concussion (and he had suffered several others while working).  The concussions affected his thinking, including concentration and memory, and his balance.  He also had back problems.  He stopped working due to pain in his lower back and his knees.

Plaintiff testified that he could stand comfortably for about half an hour at a time.  His lifting was limited to ten pounds, and he lifted mostly with his right arm.  He also was depressed due to his medical conditions, but he had not undergone any mental health treatment.  He was seeing a pain specialist and had been taking pain medications for more than five years.  He could sit but needed constantly to change positions due to pain in his back, leg and arm.  He had been told he would probably need both knees replaced.

### III.  The Medical Records

The medical records in this case are found beginning on page 235 of the administrative record.  The pertinent records can be fairly summarized as follows.

Plaintiff was diagnosed with bilateral knee sprain in 2004.  An MRI done at that time showed only mild effusion in the right knee.  He was cleared to return to work.  (Tr. 235).  Three years later, his knees were evaluated and Dr. Solak, the examiner, diagnosed bilateral chondromalecia patella, right greater than the left.  He prescribed a course of physical therapy.  (Tr. 294-95).

Plaintiff's left shoulder condition was evaluated by a chiropractor in 2006.  He expressed the opinion that plaintiff suffered a "13 percent whole person impairment" from this injury

with significant limitation in range of motion noted. (Tr. 239-41).

Plaintiff was seen at the Genesis-Bethesda emergency room on May 21, 2007 complaining of pain from a prior back injury. At that time, he was observed as walking without difficulty and sitting easily. There was some paraspinal tenderness in the lower back. He was given medication and told to follow up with his primary physician. (Tr. 262-64). He returned a week later and was given additional medication. (Tr. 280-86).

On March 12, 2008, plaintiff obtained an evaluation of his left shoulder, which he had injured in 2005. He reported some numbness and tingling in the shoulder as well as significant pain and dysfunction. The shoulder area showed tenderness but not atrophy. He had pain with both active and passive movement of the shoulder. An MRI arthrogram was performed which showed a slight SLAP (or superior labral) tear but no evidence of a rotator cuff tear. He was referred to a shoulder specialist. (Tr. 308-10). Dr. Bishop, the specialist, performed surgery in December, 2008, noting the existence of a small SLAP lesion (which she repaired) as well as a large amount of erythematous bursal material. She performed an extensive bursectomy. She saw no evidence of rotator cuff tear. (Tr. 372-73). Plaintiff undertook a course of physical therapy after the surgery. At four and one-half months post surgery he was doing well but still had pain. He then discontinued therapy but did home exercises. One year post surgery he still had pain as well as headaches caused by moving his shoulder, but he was described as having "progressed to recovery...." (Tr. 462).

Plaintiff saw Dr. Holtzmeier on September 13, 2007 for evaluation of his low back pain. On examination, plaintiff had loss of range of motion in the lower back with significant tenderness. Straight leg raising was positive on the right. An

MRI was recommended. (Tr. 335-36). Dr. Holtzmeier later recommended a pain management referral. (Tr. 342). He reviewed the MRI studies and in a letter dated April 17, 2008 described the results as showing sustained disc bulging at L4-5 and L5-S1. (Tr. 350).

A workers compensation evaluation was done on June 12, 2009 by Dr. Gade-Pulilo. Plaintiff described the initial injury to his shoulder, the fact that he had postponed treatment, and then its locking up one day, prompting him to seek medical care. He stated that he had been diagnosed with a SLAP lesion and a rotator cuff tear. He had surgery and physical therapy but was still experiencing pain and reduced range of motion. He had difficulty with overhead activities and with pushing and pulling with his left arm. His passive range of motion was described as "pretty good" and manual muscle strength testing was normal, although he had a small amount of atrophy. Dr. Gade-Pulilo thought plaintiff would benefit from continued physical therapy and from a work conditioning program (Tr. 386-89).

Dr. Neiger, a state agency reviewer, completed a physical functional capacity form on September 17, 2009. She thought plaintiff could perform a range of light work but could never balance and only occasionally crawl. She also thought he was limited in reaching in all directions, including overhead. (Tr. 393-400). In 2010, a workers compensation consultant, Dr. Flanagan, said that plaintiff could return to work in a light or medium job. (Tr. 718-22). One of plaintiff's treating physicians, Dr. Haggenjos, disagreed, but recommended that plaintiff be re-evaluated by Dr. Bishop, that his true functional capacity be determined, and that he undergo vocational rehabilitation to allow him to return to the work force. (Tr. 713-14).

Plaintiff saw Floyd Sours, MA, for a psychological assessment

on October 8, 2009. He reported a history of work-related injuries culminating in a fall in 2006. He said that after the surgery he was able to move his shoulder but still had pain. He described mild depression in the past two weeks and said he got depressed two or three times a week. His daily activities consisted of watching television, doing chores, feeding animals, and sometimes fixing meals. He had a number of friends. Mr. Sours diagnosed an adjustment disorder with depressed mood and rated plaintiff's GAF at 65, indicating that he was "functioning fairly well at the present time." His only limitations were a mild impairment in attention and in dealing with work stress. (Tr. 401-04). This report was reviewed by Dr. Zwissler, who found that plaintiff did not have a severe psychological impairment. (Tr. 407-20). A later evaluation done by Dr. Weinstein appears to disagree, concluding that plaintiff was suffering from a major depressive disorder and was temporarily totally disabled. (Tr. 709-12).

In 2010 plaintiff was in a vehicle accident. He went initially to the emergency room but was transferred to Grant Hospital. There, he was diagnosed with a concussion and neck pain and sent home. (Tr. 500).

## IV. The Medical Testimony

Dr. Gatens, a medical expert, testified at the administrative hearing. His testimony is found at pages 62-69 of the record.

Dr. Gatens stated that the medical records appeared to show the shoulder to be plaintiff's most significant problem although there were also records documenting conditions in the lower back and knees. The impairments, taken together, did not meet or equal any Listing.

Dr. Gatens' opinion as to plaintiff's functional capacity was as follows. Plaintiff could lift ten pounds both occasionally and frequently, could stand and walk for five hours if he could change

-5-

positions every 45 minutes, could sit six to eight hours if he could change positions every 90 minutes, and could not climb ropes, ladders or scaffolding.  Additionally, he could kneel, crouch or crawl only occasionally, could not do overhead lifting with his left arm, could not do extended reaching or pushing with that arm, and could climb stairs (with a railing) only occasionally.  These limitations began on March 12, 2008.

V.   The Vocational Testimony

A vocational expert, Dr. Robinson, also testified at the administrative hearing.  Her testimony begins at page 69 of the record.

Dr. Robinson described plaintiff's past positions as poured concrete wall technician, which was a heavy, skilled job, and as concreting supervisor, which was a light, skilled job (but heavy if the foreman also has to do concrete work occasionally).  Both jobs may also be performed at the very heavy exertional level.

Dr. Robinson was asked to assume that plaintiff was limited in his activities and abilities in the way that Dr. Gatens described.  If that were so, plaintiff could not do his past jobs but could work only at the sedentary level, and with restrictions at that level.  About 1,600 such jobs existed in the southeast Ohio region.  Examples would include document preparer, check casher, and callout operator.  Half of those jobs would be eliminated if plaintiff could not extend his left arm.  If plaintiff's testimony were accepted in full, however, the limitations he described would prevent him from being competitively employed.

VI.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 112 through 123 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met

the insured requirements for disability benefits through December 31, 2010.  Next, plaintiff had not engaged in substantial gainful activity from his alleged onset date of December 31, 2006 through his last insured date.  The ALJ found that plaintiff had severe impairments including right knee pain with chondromalecia, low back pain with disc bulge, left shoulder pain with torn rotator cuff, status-post arthroscopy surgery, and neck pain.  The ALJ also found that plaintiff's impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff could do a limited range of sedentary work.  He adopted the residual functional capacity finding of Dr. Gatens but added a limitation that plaintiff would need to be able to alternate between sitting and standing every 45 minutes.  The ALJ determined that, with these restrictions, plaintiff could not perform his past relevant work but he could do the jobs identified by Dr. Robinson.  Consequently, the ALJ concluded that plaintiff was not entitled to benefits.

VII.  <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, plaintiff raises three issues.  He argues (1) that the ALJ should have found his depression to be a severe impairment; (2) that the ALJ did not properly evaluate his testimony concerning chronic pain; and (3) that the sedentary job base was sufficiently restricted by his inability to extend his left arm that, even if Dr. Gatens' assessment of his limitations were accepted, there was not a significant number of jobs that he could perform.  The Court generally reviews these contentions under this legal standard:

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial

evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

 Plaintiff's first argument relates to the ALJ's decision about his depression.  The ALJ found that impairment not to be "severe" at step two of the five-step evaluation process, meaning that it produced no more than minimal limitations on plaintiff's ability to function from a psychological standpoint.  The Court finds no error in the way in which the ALJ performed this evaluation.

 The Court of Appeals has described in detail how the ALJ is required to proceed at step two in evaluating mental impairments. In Rabbers v. Comm'r of Social Security, 582 F.3d 647, 652-53 (6th Cir. 2009), the court said:

> At step two, an ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." [20 C.F.R.] §404.1520a(b)(1). If the claimant has a medically determinable mental impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas": "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Id. §§404.1520a(b)(2), (c)(3). These four functional areas are commonly known as the "B criteria." See 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00 et seq.; Craft v. Astrue, 539 F.3d 668, 674 (7th Cir.2008). The degree of limitation in the first three functional areas is rated using the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, one or two, three, four or more. Id. If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. Id. §404.1520a(d)(1). Otherwise, the impairment is considered severe and the ALJ will proceed to step three. See id. § 404.1520a(d)(2).

Here, the ALJ cited to the evidence - mainly the consultative examination performed by Mr. Sours - in determining that the B criteria had not been satisfied.  He found that plaintiff had no limitation in the areas of activities of daily living and social functioning, mild limitations in the area of concentration, persistence and pace due to memory problems and depression, and had not experienced any periods of decompensation of extended duration.  The ALJ concluded that

> Because the claimant's medically determinable mental impairment caused no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it was non-severe (20 C.F.R. §404.1520a(d)(1)).

Tr. 116.

Plaintiff does not argue directly that the ALJ's conclusions as to each of these four areas of functioning are not supported by substantial evidence.  Rather, he asserts that the ALJ improperly relied on his failure to seek mental health treatment as the reason for finding his depression not to be severe, and he argues, based on decisions such as Burton v. Apfel, 208 F. 3d 212 (6th Cir. Jan. 24, 2000)(unreported), that the failure to seek mental health treatment may not be used as the "determinative" factor in deciding if a mental impairment is severe.

Burton clearly stands for the proposition that when the record contains "substantial evidence of a severe mental impairment" it is error for an ALJ to discount this evidence solely because the claimant has not sought treatment.  Id. at *4.  There, the claimant's failure to seek such treatment was "hardly probative of a of lack of mental impairment in light of the substantial, medically documented evidence that [the claimant] suffers from a mental impairment...." Id.  But that is not this case.

First, there is no substantial or medically documented evidence of a severe mental impairment in this case.  The only full evaluation of plaintiff's depression is the one done by Mr. Sours.  Plaintiff himself concedes that Mr. Sours "felt that [plaintiff] would suffer from a mild impairment in attention to perform tasks int a work setting ... and that there would also be a mild impairment withstanding stress and pressures associated with day to day work activities ...." Plaintiff's Statement of Errors, Doc. 13, at 5.  The presence of two mild impairments, both relating to concentration, persistence and pace, with no other impairments noted, simply reinforces the ALJ's conclusion that under the B criteria, plaintiff's depression was not severe.

Second, the ALJ did not rely primarily upon plaintiff's

failure to seek treatment when he decided that plaintiff's depression was not severe. He mentioned that factor only once, and otherwise properly focused not on the lack of treatment, but on the content of the medical records and the conclusions reached by both Dr. Sours and the state agency reviewer based on those records. It simply cannot be said here that the plaintiff's failure to seek treatment was "determinative" of the ALJ's conclusion. Thus, Burton and the cases it relied on, such as Blankenship v. Bowen, 874 F.2d 1116 (6th Cir. 1989), are simply inapplicable to this case.

   Plaintiff's next argument is, as he states it, that "[t]he ALJ incorrectly assessed the claimants' (sic) credibility and his testimony regarding chronic pain." Statement of Errors, at 7. In support of his position, plaintiff asserts that the ALJ "penalized" him for attempting to work in spite of his impairments and for attending college in an effort to retrain himself for less strenuous work. He also argues that the fact that he sought only sporadic treatment for some of his conditions should not have factored into the ALJ's credibility analysis, and that the ALJ erroneously failed to consider his long work history.

   Evaluation of a claimant's subjective reports of disabling pain is subject to a two-part analysis. First, the Commissioner should determine if there is objective medical evidence which confirms the presence of disabling pain. If not (and there frequently is not, given that pain is difficult to measure or quantify, and is experienced differently even by persons with the same underlying condition), the Commissioner should determine if the claimant suffers from an objectively-established medical condition of sufficient severity to permit a reasonable inference to be drawn that the disabling pain actually exists. See Duncan v. Secretary of H.H.S., 801 F.2d 847, 853 (6th Cir. 1986). This procedure is reflected in 20 C.F.R. §404.1529(a), and clarified

in Social Security Ruling SSR 96-7p.

It is important to note that these inquiries are to be made separately, and that if there is objective evidence of a sufficiently severe underlying condition, a claimant can prove the existence of disabling pain due to that condition through other evidence even if the medical evidence is not helpful in establishing the extent of the claimant's pain. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994). Thus, the Commissioner is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking, but must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3). The Commissioner should also give appropriate weight to the opinion of a long-term treating physician as to whether the claimant is accurately reporting or exaggerating the extent to which disabling symptoms exist. Felisky, 35 F.3d at 1040. If the Commissioner summarily rejects the claimant's testimony concerning pain without considering these matters, reversal or remand may be warranted.

Since tolerance of pain is a highly individual matter, determination of disability based on pain also depends to some extent on the credibility of the claimant. Houston v. Secretary of H.H.S., 736 F.2d 365 (6th Cir. 1984). If the Commissioner rejects the claimant's testimony as to the extent of the claimant's pain, there need not be an express credibility finding. Willis v. Secretary of H.H.S., No. 84-3477, slip op. at 9 (6th Cir. Apr. 30, 1985) (unpublished opinion), citing Ramirez v. Secretary HEW, 550 F.2d 1286 (1st. Cir. 1977). However, the reasons for the rejection must be apparent from the record. Id. This requirement insures that

a sufficient record for review of the Commissioner's credibility determination is made. Beavers v. Secretary of HEW, 557 F.2d 383, 386-87 (6th Cir. 1978), citing Combs v. Weinberger, 501 F.2d 1361 (4th Cir. 1974). In order to reject claimant's credibility, the Commissioner cannot rely solely on personal observation of the claimant but must base the credibility determination on "some other evidence." Weaver v. Secretary of H.H.S., 722 F.2d 310, 312 (6th Cir. 1983) (emphasis in original); see also, Persons v. Secretary of H.H.S., 526 F.Supp. 1202 (S.D. Ohio 1981). In light of the Commissioner's opportunity to observe the claimant's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. Kirk v. Secretary of H.H.S., 667 F.2d 524, 538 (6th Cir. 1981); Beavers v. Secretary of HEW, 577 F.2d at 386-87. The evaluation of a claimant's credibility is largely committed to the discretion of the Commissioner, and the findings made in that regard are entitled to "great weight and deference." Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997). However, the Commissioner's credibility finding is not entitled to substantial deference if the medical and lay evidence supporting allegations of pain is uncontradicted and overwhelming. King v. Heckler, 742 F.2d 968 (6th Cir. 1984).

 The Commissioner argues that the ALJ properly followed these legal precepts in deciding that plaintiff's testimony about disabling pain or limitations was not entirely credible. For the following reasons, the Court agrees.

 The ALJ identified SSR 96-7p as governing his inquiry into plaintiff's credibility. That is the correct standard. The ALJ considered the sporadic nature of treatment for the first two years during which plaintiff alleged disability; SSR 96-7p permits the ALJ to do so, noting that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints ...." He

also considered evidence that, even while he was complaining of disabling symptoms, plaintiff was able to attend college, travel, and work periodically.  SSR 96-7p permits consideration of the entire record, including information about a claimant's "daily activities, behavior, and efforts to work."  The ALJ took the relevant medical records into account, noting that much of the treatment plaintiff received was, to some degree, successful in reducing or controlling his symptoms, that much of the treatment was conservative in nature, and that no doctor recommended or imposed limitations totally inconsistent with working at some exertional level.  Given that these are all legitimate factors, and that weighing such factors is ordinarily the job of the ALJ and not the reviewing court, the Court does not find any basis for reversing the ALJ's decision on the issue of credibility.

    Plaintiff's final argument is that the job base identified by Dr. Robinson was so reduced by his various limitations that it was unreasonable for the ALJ to find that he could perform substantial gainful activity.  Plaintiff cites no case law on that issue, and seems to include in his argument the assertion that had the ALJ considered either his mental limitations or the limitations to which plaintiff testified, the job base would have been eroded even further.  Because the Court has found plaintiff's contention on these issues to be without merit, the only question which must be addressed here is whether the vocational testimony supported the ALJ's finding that a substantial number of jobs existed which plaintiff could still perform despite his documented impairments.

    It is not entirely clear how the ALJ dealt with the issue of plaintiff's being unable to extend his left arm.  His finding as to residual functional capacity was that plaintiff could not engage in "extended reaching" with that arm.  Dr. Gatens seemed to say that plaintiff could reach his arm full out in front of him.  See Tr. 74 ("In front of him it would be okay").  The

reduction made by Dr. Robinson in the sedentary job base was for someone for whom "there is no extending out like that ...." (Tr. 75). Therefore, the ALJ did not have to accept the testimony about a 50% reduction in the jobs which Dr. Robinson identified, and from his decision, which incorporates the first set of numbers she testified to (1,600 jobs in the local economy, and 300 in each of the three specific positions she identified) it does not appear that he did.

The Commissioner cites to a number of cases, beginning with Hall v. Bowen, 837 F.2d 272 (6th Cir. 1988) which hold that such numbers can be considered evidence of a substantial number of jobs available to a claimant. Hall itself involved only 1,350 jobs in a local economy. This Court has found that 1,200 jobs in the local economy can be a significant number. See, e.g., Swett v. Comm'r of Social Security, 2008 WL 552481, *13 (S.D. Ohio Feb. 26, 2008). Given the testimony of Dr. Robinson not only about the number and type of such jobs available locally, but nationally, the Court agrees with the Commissioner that the ALJ reasonably found that a substantial number of jobs existed which plaintiff could perform. Consequently, none of plaintiff's three claims of error require either reversal or remand.

## VIII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner.

## IX. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or

recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
